Dickman, J.
The original action was brought by Owen Grady, the plaintiff, against the defendants Gosline &-Barbour, a partnership sued by its company’s name, to recover for injuries alleged to have been received by the plaintiff, through the carelessness of the defendants in neglecting to *666 securely prop the roof of their coal mine, in which the plaintiff was employed as a miner. Summons was issued, directed to the sheriff of Perry county, was served by him in that county, and was duly returned by him, indorsed as follows: “ Received this writ January 21, 1890, at 5 o’clock P. M., and pursuant to its command, I did, on the twenty-fifth day of January, A. D. 1890, summon the within named defendants, Gosline & Barbour, by leaving at their usual place of business, and with J. H. Powell — he being the general manager of the above named defendants — a true and certified copy of this writ, with all indorsements thereon.”
A motion was filed by the defendants to quash the service of the summons, for the alleged reasons: First — That the defendants are a partnership formed for the purpose of doing business in Ohio, and actually doing business therein in mining and shipping and vending coal; that the residence of the partnership, and its only usual place of doing business in this state, is in Toledo, in Lucas county; and that the defendants, partners, are each residents of Toledo, and are sued by the partnership name. Second — That the court had no jurisdiction in the premises, and acquired none by the “ pretended service of summons ” in the action.
The motion was heard upon affidavit and oral testimony, embodied in a bill of exceptions and made part of the record, and the service of the summons was set aside; to which finding and ruling of the court, the plaintiff excepted, and prosecuted a petition in error in the circuit court, which affirmed the judgment of the coifrt of common pleas. This proceeding is instituted to reverse the judgment of the circuit court.
The only testimony offered by the defendants in support of their motion, was their own affidavit, in which they set forth, substantial^ as in their motion, no other facts than that they are a partnership formed for the purpose of doing business in Ohio, and actually doing business therein in mining, shipping and vending coal in large quantities, and from many different points ; that they and each of them reside in the city of Toledo, and have their office at No. 422 Madison *667 street, in that city; and that their office in Toledo is their only usual place of doing business.
As undisputed facts disclosed in the record, the defendants, at the time of the commencement of the original action, were operating a coal mine at Shawnee, in Perry county. They had there a general manager and superintendent of their business, who, with his assistants, hired men for driving entry and mining coal, and who, in fact, exercised complete control of the business. They there sold coal to their miners; made purchases of lumber for the mine ; had an office for the superintendent, and kept a book of accounts, in which were entered the coal mined by each man, and the number of days each laborer worked; paid the miners, shipped coal, and sold surface land; transacted business at the general store near by, where their employees presented orders from the superintendent and obtained supplies ; and in general, did whatever was necessary in' mining and shipping coal. This was the only place where the defendants transacted any business in Perry county, and it was here that a copy of the summons was left, as the usual place of doing business in Perry county.
It is contended in behalf of the plaintiff, that the court erred in admitting in evidence the affidavit of the defendants. Where there has been an irregularity in the service of the original summons, through which the court has failed to get jurisdiction over the party defendant, it is competent, on motion, before answering to the merits of the action, to have the service of summons set aside, and in support of the motion affidavits may be used. It is said by Mr. Nash (1 PL & Pr. 75) that, “ the service of the original summons will be set aside on motion, if served on a wrong person, or the copy is not left at the right place. The existence of any fact showing that the service is not correct, may be set up to vacate it. The motion should state the grounds on which the party relies as showing the service had.”
It is an established rule, that an official return duly made upon process by a sworn officer, in relation to facts which it is his legal duty to state in it, is, as between the parties and *668 privies to the suit and others whose rights are necessarily dependent upon it, conclusive of the facts stated therein, until vacated or set aside by due course of law. But, as to the course to be pursued in vacating and setting aside the officer’s return, it might well be urged, that it would in many cases work injustice, to hold the return of an original summons conclusive — to compel, it might be, a waiver of the irregularity by appearance — and to drive the defendant to an action against the officer for a false return. It was accordingly held, in Van Rensselaer v. Chadwick, 7 How. Pr. 297, that the return of a sheriff, or an affidavit of a person acting in his place, of the service of a summons, is not conclusive upon the defendant, and that he may be allowed to disprove it on a motion to set the proceedings aside. See also, Nones v. Life Insurance Co., 5 How. Pr. 96; Wallis v. Lott, 15 How. Pr. 567; 1 Yaple’s Code Pr., 395.
By the act of February 12, 1879, (76 O. L. 15), it was provided, “ That'when a partnership carrying on a trade or business in this state, or holding property therein is sued by the usual or ordinary name which it has assumed, or by which it is known, process may be served against such company or firm by a copy left at its usual place of doing business within the county I
Section 5052 of the Revised Statutes, regulating the manner of service and return of the summons, provides that, “ The service shall be by delivering, at any time before the return day, a copy of the summons, with the indorsements thereon, to the defendant personally, or by leaving a copy at his usual place of residence, or, if the defendant is a partnership sued by its company name, by leaving a copy at its usual place of doing business.” The provisions of the act of February 12, 1879, are thus substantially continued in section 5052 of the Revised Statutes, with the omission of the words, “ within the county.”
The chief question, therefore, for consideration in the case at bar is, whether the original summons was served upon the defendant partnership at its usual place of doing business, within the meaning and requirement of the statute. The *669 obvious meaning of the act of 1879 was, that a partnership might be sued by its firm name in any county within which it had a usual place of doing business. Such partnership might have such a place of business in any county in the state where its interests would be promoted by establishing itself; and it might prove difficult to determine, in many instances, in what county, if any, its principal place of business was located. The language, “ within the county,” would seem to recognize the fact, that the usual place of business within the county where the action was commenced was not the only place where the company usually transacted the kind of business in which it was engaged.
The effect of omitting from the statute the words “ within the county ” is not, we think, to limit the right of suing the partnership to one county, notwithstanding it might have a usual place of doing business, in the true sense, in several counties. If such is its effect, at which one of such usual places is a copy of the summons to be left by the officer, for the purpose of serving process? Is it to be the principal place among those designated as usual places of doing business ? If it is, by what safe rule is the officer to be guided in making service so as not to jeopardize the plaintiff’s rights ?
The words “within the county,” might well have been omitted because deemed unnecessary after the words, “its usual place of business,” as they would be after the words, “ at his usual place of residence,” when service is made on an individual. The authority of a sheriff is confined within the .territorial limits of his county. He cannot execute any kind of process except within it, and such illegal action, whether proceeding, from mistake or perversity, is void. When, .therefore, a summons is directed to a sheriff, for service upon a partnership by its firm name, the statute contemplates that he will leave a copy thereof at the company’s usual place of doing business within his bailiwick or county, if such a place can be found therein, as he would make service on an individual by leaving a copy at his usual place of residence. If, as a fact, there is a usual place of doing business within the county, and a copy of the.summons is there left by the offi *670 cer, the service of process will be in compliance with the statute.
But conceding that it devolved on the plaintiff, if he would maintain his action, to determine in the first instance, whether the defendants’ usual place of doing business, within the statutory meaning, was in the county of Lucas or in Perry county, we are not prepared to say, that such usual place of business, was not in Perry county, where the suit was instituted. The business of the partnership was mining and shipping coal, and it was in that county that the company had invested its capital, and there expected to realize its profit and advantage. The defendants set forth in their affidavit, that they and each of them reside in the city of Toledo, in Lucas county, but this court has said in Smith v. Hoover, 39 Ohio St. 249, “ It is the clear intention of the legislature that actions against companies in the firm name should be prosecuted only in the county in which its usual place of business may be situated, without regard to the residence of the firm.” The statute gives to the partnership thus sued a status in court as an artificial or ideal person, irrespective of the residence of those who compose it. And the statement by the defendants that their usual and only usual place of doing business is at their office- in the city of Toledo, cannot avail, because not authorized by the facts set forth in their affidavit. It cannot be legally inferred, because they respectively reside in Toledo, and are a partnership actually doing business in Ohio in mining, shipping and vending coal in large quantities, and from many different points, that their usual place of doing business is in Lucas and not in Perry county.
Judgment of the circuit court and the court of common fleas reversed, and cause remanded for further froceedings.