## MILLER v. MINERALS SEPARATION LIMITED et al.

(District Court, N. D. California, Second Division. September 6, 1921.)

No. 16197.

1. **Corporations ⊚⇒665(1)—Not subject to suit in foreign jurisdiction in which it is not doing business.**

A corporation cannot be sued in a jurisdiction foreign to that of its organization unless it is there doing business at the time the action is commenced.

2. **Courts ⊚⇒280—Jurisdictional allegations in complaint may be controverted by affidavit.**

Where the complaint in an action in a federal court against foreign corporations contains allegations not essential to the statement of the cause of action, but relating solely to the question of the court's jurisdiction over defendants, such allegations may be controverted by affidavits for the purposes of a motion to dismiss or to quash the service on the ground of want of jurisdiction over defendants.

At Law. Action by John H. Miller against the Minerals Separation Limited and others. On motions by certain defendants to quash service of summons and dismiss as to such defendants. Motions granted.

John H. Miller, of San Francisco, Cal., in pro. per.
Garret W. McEnerney, of San Francisco, Cal., for defendants.

VAN FLEET, District Judge. These are motions to quash service of summons and dismiss the action as to certain of the defendants. The action is one to recover damages resulting from the breach of an alleged contract to employ plaintiff as an attorney at law in certain patent infringement litigation involving a process of ore concentration by air froth flotation. It proceeds against four corporations named as defendants, the first three, namely, Minerals Separation Limited, Minerals Separation American Syndicate Limited, Minerals Separation American Syndicate (1913) Limited, being British corporations, and Minerals Separation North American Corporation, a Maryland corporation. They are named in the action in the order of their organization respectively and have been referred to by counsel for convenience of designation as "first corporation," "second corporation," etc., and such method of designation may be adopted for present purposes. The cause of action proceeds upon the basis, as alleged, that the employment of plaintiff was by the three British corporations, and that the liability of fourth corporation, organized since such employment, arises from voluntary assumption of the obligation. Service of summons in the action for all four defendants was had upon one Edward H. Nutter, designated under the laws of the state by fourth corporation as its agent upon whom process against it might be served. The latter defendant in due course appeared generally to the merits, but the three British corporations have each severally appeared specially and moved the court to quash the service as to them and dismiss the action upon the ground as to each that the service upon Nutter was unauthorized, and that at the time of the commencement of the action

and the attempted service of summons it was not doing business in this state.

[1] In response to these motions plaintiff does not controvert the principle now thoroughly settled that a corporation, being a creature of the law of the state or country of its creation, cannot be sued in a jurisdiction foreign to its organization unless it is there doing business at the time the action is commenced (Conley v. Mathieson Alkali Works, 190 U. S. 406, 23 Sup. Ct. 728, 47 L. Ed. 1113; Peterson v. C., R. I. & P. R. R., 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed. 841; Philadelphia, etc., Ry. Co. v. McKibbin, 243 U. S. 264, 37 Sup. Ct. 280, 61 L. Ed. 710; People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 38 Sup. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537), but he seeks to sustain his right to serve the defendants in the manner stated and maintain jurisdiction of them here by certain facts alleged in his complaint, purporting to give a history of the formation and method of doing business of the several defendants, which, in connection with facts set up in an affidavit filed in response to the motions, he contends support the theory upon which he proceeds.

The pertinent facts alleged in his complaint bearing on this theory are in substance these: That on or about August 24, 1910, first corporation "caused" second corporation to be incorporated "and became and ever since has been the owner and holder of a majority" of its capital stock, in consideration of which it granted to second corporation an exclusive license to use in the United States for a period of years the inventions of certain letters patent of the United States owned by first corporation; that on or about June 27, 1913, first corporation and second corporation "caused to be incorporated" third corporation, and thereupon first corporation "became and ever since has been the owner and holder of a majority of the capital stock" of third corporation; that on or about August 1, 1913, third corporation "took over by assignment all the property and assets" of second corporation, and thereupon became the successor of second corporation "and an adjunct to and agent" of first corporation throughout the United States and controlled by the latter; that third corporation "acted in such capacity and carried on and did business throughout the United States and in the state of California, Northern district thereof, until on or about March 16, 1917"; that on or about December 9, 1916, first corporation "caused to be created under the laws of the state of Maryland fourth corporation having its principal place of business at the city of Baltimore, in the state of Maryland, but doing business in the state of California and Northern district thereof, and having a managing and business agent therein," and first corporation then "became and ever since has been the owner and holder of the entire capital stock thereof."

It is upon these allegations and certain facts set up in his supporting affidavit that plaintiff bases the conclusion stated in his affidavit:

"That the fourth corporation was and is the agent in the state of California of the first, second, and third corporations, and that the business being conducted by the fourth corporation in the Northern district of California was and is in contemplation of law being conducted by the first, second, and third corporations through and by such fourth corporation as their agent."

And from these facts plaintiff contends that at the time of service fourth corporation was properly to be regarded as the agent upon whom service could competently be made for its codefendants; that indeed in legal contemplation it was and is the mere alter ego of the other defendants in carrying on business in this state.

It may be here stated that plaintiff, at the argument, without abandonment of his theory as to the manner and purpose of their organization, conceded that as to second corporation and third corporation the showing had disclosed that both had practically or entirely retired from or ceased doing business before the bringing of the action, that the latter was in fact actually defunct and the former moribund, and that as to them the motion should be granted. Accordingly those two defendants may be dismissed from further consideration.

This leaves only the question involving the status of first corporation. As to this defendant it may be said at once that, if the affidavits presented in its behalf are competent and available for the purpose, they entirely refute and overthrow the facts alleged in the complaint touching its relation to its codefendants as well as those stated in plaintiff's affidavit tending to sustain his right to sue it in this jurisdiction. Without indulging in unnecessary detail, those affidavits, all made by persons perfectly cognizant from their own knowledge of the facts which they state, are to the effect that first corporation, while in a sense the parent corporation, in that it was originally the owner of all the patents granted in this and other countries involving the so-called flotation process, did not organize or cause the organization of either or any of the other defendant corporations, but that each of those corporations in turn was organized by other and distinct interests for their own business purposes, and was carried on and conducted as a wholly independent enterprise and organization, controlled and directed by its own independent board of directors, and to no extent responsible to or controlled by first corporation; that, while the latter owns an interest in the capital stock of fourth corporation, such holding at and before the bringing of the action and service of the summons was not to exceed one-twentieth of 1 per cent. of such stock; that it neither controls or directs its business in any way, but that all such business and transactions are conducted entirely independently of first corporation and without requirement to account to the latter in any way; that the two corporations are, in other words, wholly distinct entities in no way in privity with each other.

If the method of showing these facts is competent, it is needless to say that the plaintiff's theory that fourth corporation was controlled by first corporation in the sense claimed must fall to the ground, since, even if the latter owned the entire capital stock of the former, it would not show control in any legal sense. Pullman Palace Car Co. v. Missouri Pacific Ry. Co., 115 U. S. 587, 6 Sup. Ct. 194, 29 L. Ed. 499; Conley v. Mathieson Alkali Works, 190 U. S. 406, 23 Sup. Ct. 728, 47 L. Ed. 1113; Peterson v. C., R. I. & P. R. R. Co., 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed 841.

[2] But plaintiff makes the objection that defendant's affidavits are not competent to meet the allegations of his complaint as to the history

and organization of defendant corporations. Referring to those allegations and the features of defendant's affidavits tending to refute them, he says:

"The foregoing were issues of fact tendered by the complaint. Those issues cannot be met by affidavits on behalf of defendants on a motion to quash service of process, but only by an appropriate pleading provided by the rules of practice."

But, whatever the purpose intended to be subserved by including these allegations in his complaint, it is clear that plaintiff has wholly misapprehended their effect. While plaintiff's objection would doubtless be well taken did it arise upon any allegation of fact essential to his cause of action, these averments are not of that character. They are wholly unessential to the statement of an ordinary cause of action such as this for damages arising from breach of contract. All that it was necessary for plaintiff to allege was the making of the contract and its breach, and, incidentally, the facts which would bring the controversy within the general grant of jurisdiction of this court over the subject-matter. It was wholly immaterial to that cause of action what the particular history or character of the defendant corporations was or for that matter where they were doing business. While it is essential in an action against a foreign corporation, unless the objection is waived, to show, in order to give the court jurisdiction of the person of the defendant, that it was at the time of bringing the action doing business within that jurisdiction (St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222; Cady v. Associated Colonies [C. C.] 119 Fed. 420; Henning v. Planters' Ins. Co. [C. C.] 28 Fed. 440; Hazeltine v. Mississippi Val. Fire Ins. Co. [C. C.] 55 Fed. 743), this fact constitutes no proper feature of the statement of a plaintiff's cause of action (Friezen v. Allemania Fire Ins. Co. [C. C.] 30 Fed. 349; Multnomah Co. v. Weston Co., 54 Or. 22, 99 Pac. 1046, 102 Pac. 1).

Moreover, it is the settled rule of practice in these courts that the objection by a foreign corporation to being sued in a jurisdiction where it is not doing business may properly be interposed by a motion to dismiss. Wall v. Chesapeake & O. Ry. Co., 95 Fed. 398, 37 C. C. A. 129; Benton v. McIntosh (C. C.) 96 Fed. 132; Forrest v. Pittsburgh Bridge Co., 116 Fed. 357, 53 C. C. A. 577; Union Water Dev. Co. v. Stevenson (D. C.) 256 Fed. 981; Vitkus v. Clyde S. S. Co. (D. C.) 232 Fed. 288; Higham v. Iowa State Travelers' Ass'n (C. C.) 183 Fed. 845. This being so, if plaintiff's contention were good, it would entirely subvert this established method of procedure, since, by merely alleging as here in an unverified complaint what purport to be the facts as to the place of the defendant's doing business, a plaintiff could practically deny a defendant all substantial benefit of a motion of this character and coerce it to answer to the merits.

It is obvious, therefore, that the rule of procedure invoked by plaintiff, while salutary and orderly in its place, has no application to the facts before us, and that the plaintiff may not, by merely anticipating in his complaint the facts upon which such a motion as this may be founded, prevent the defendant from meeting those facts in the usual

and ordinary way recognized in raising the question of jurisdiction over its person.

This renders it unnecessary to consider the question of the legal sufficiency of the plaintiff's affidavit, and it results from what has been said that the motions must be granted; and it is so ordered.